**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[7] MARK BRUNO MONZELL MAJOR,<br><br>**Defendant.** | **NO. 23-312-7 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the United States of America's (the "United States" or the "Government") *Motion in Limine* at Docket No. 365, seeking the exclusion of five categories of evidence Defendant Mark Bruno Monzell-Major ("Defendant" or "Monzell") may attempt to admit. Having considered the *Motion* and the response in opposition thereto, and for the reasons outlined below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the *Motion in Limine*.

## I.   BACKGROUND

On August 23, 2023, a Grand Jury in this District indicted Monzell, alongside several co-defendants, on three counts: conspiracy to commit money laundering, attempted money laundering, and money laundering. (Docket No. 3 at 2-6). The United States claims that Monzell and several of his co-defendants participated in a plan to transport the illicit proceeds of controlled substance

Criminal No. 23-312-7 (RAM)                                          2

sales in the form of bulk currency from the United States to places elsewhere, such as the Republic of Colombia. Id. at 3. Monzell, in particular, is accused of conspiring to participate in this money laundering scheme; of himself delivering $165,000 in bulk U.S. currency as a part of this scheme in June 2022; and of attempting to deliver $413,411 in bulk U.S. and Bahamian currency in October 2022. Id. at 5-6.

Through the instant *Motion in Limine*, the United States seeks to bar Monzell from: raising jury nullification arguments; referencing plea negotiations; probing the United States' investigative techniques; challenging discovery in front of the jury; and eliciting self-serving out-of-court statements. (Docket No. 365 at 1).

## II.  ANALYSIS

### A. Jury nullification, plea negotiations, and discovery

Monzell explicitly states that he "does not object" to the United States' *Motion in Limine* at Docket No. 365 as it relates to jury nullification, plea negotiations, and discovery, aside from a generic reservation of "the right to argue that the evidence is not enough to prove guilt beyond a reasonable doubt, to test the credibility of the government's witnesses based on how they ran the investigation, and to put forward evidence of [his] state of mind." (Docket No. 380 at 2-3).

The Court agrees that Monzell may not make open jury nullification arguments, argue about the severity of the punishment, or ask jurors to put themselves in his shoes. The First Circuit has made clear that a juror's duty is to apply the law, and that the Court and counsel should not "encourage jurors to exercise their power to nullify." United States v. Bunchan, 626 F.3d 29, 34 (1st Cir. 2010); see also United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993). The Supreme Court has recognized that the jury has no sentencing function and that it is not to consider the consequences of its verdict. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("[i]t is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.' The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged...[i]nformation regarding the consequences of a verdict is therefore irrelevant to the jury's task") (citation omitted); see also United States v. Manning, 79 F.3d 212, 219 (1st Cir. 1996) ("[a]n attorney's attempt to achieve the [end of instructing the jury to nullify] indirectly, by arguing the severity of the punishment to the jury, is equally impermissible").

Criminal No. 23-312-7 (RAM)                                           4

The Court also approves the Government's unopposed request for Monzell to be barred from discussing the content of plea negotiations in front of the jury. *See, e.g.*, Fed. R. Evid. 410 (explaining that evidence of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea" is not admissible); United States v. Bauzó-Santiago, 867 F.3d 13, 18-24 (1st Cir. 2017) (noting that while the 1979 amendments to Fed. R. Evid. 410 modify it to exclude only statements made to the prosecutor rather than all statements pertaining to plea negotiations, the rule furthers the purpose of encouraging plea negotiations and allows for parties to have unrestrained candor during those discussions).

Lastly, the Court agrees that Monzell should not be permitted to discuss the discovery process in front of the jury. The Government contends that such a discussion would only distract the jury and create an impression that information was being suppressed. (Docket No. 365 at 5-6). Monzell does not oppose the request. (Docket No. 380 at 2-3). Under Fed. R. Evid. 403, the Court retains broad discretion to exclude evidence that may result in "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Court rules that discussing a collateral issue such as a discovery dispute, which is for the Court and not the jury to

resolve anyway, is likely to mislead the jury and distract it from the issues properly before it.

Therefore, the Court **GRANTS** the United States' *Motion in Limine* at Docket No. 365 as it relates to jury nullification, plea negotiations, and discovery.

## B. The United States' investigative techniques

The United States seeks the exclusion of arguments about the inadequacy or absence of investigative techniques used to probe the alleged money laundering. (Docket No. 365 at 3-5). Monzell responds with two potent objections: (1) that, unlike in the cases the Government cites, the present matter involves a "sting operation" set up by the Drug Enforcement Administration ("DEA") rather than ongoing criminality; and (2) that the DEA's investigative choices and procedures bear directly on the intent and jurisdictional components of the money laundering statute. Id. at 3-6.

This Circuit and District indeed mandate that a defendant may not convert his criminal trial into a far-ranging inquiry into the minute decisions of the government or law enforcement investigation. *See, e.g.*, United States v. Patrick, 248 F.3d 11, 22 (1st Cir. 2001), *overruled on other grounds by* United States v. Salvador-Gutierrez, 128 F.4th 299 (1st Cir. 2025) ("the phrase 'inadequacy of the police investigation' is too broad and itself says nothing about the relevance of the proffered evidence. Merely

showing that an investigation is sloppy does not establish relevance"); United States v. Trinidad-Nova, 2026 WL 84174, at *2 (D.P.R. 2026) (citing id.). Hence, the Government may object at trial should Monzell attempt to conduct an unnecessary exploration of the details of DEA investigation tactics.

Nevertheless, the present request is overbroad. The Circuit has recognized that the "inadequacy of police investigation" evidentiary category "covers a variety of different problems and cuts across the full spectrum of relevant and irrelevant evidence." Patrick, 248 F.3d at 22. Courts in this District have held that the "efficacy of a criminal investigation may...sometimes be relevant to the ultimate issue of guilt in a case." Trinidad-Nova, 2026 WL 84174, at *2 (citation modified). Here, some of the DEA's investigative and operational choices, such as those that relate to whether his actions occurred "in part in the United States," bear directly on statutory elements the Government must satisfy. 18 U.S.C. § 1956(f) ("[t]here is extraterritorial jurisdiction over the conduct prohibited by this section if...the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and...the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000"). The same is true under 18 U.S.C. § 1956(a), where the requisite *mens rea* standard may turn on how the DEA investigation intersected with

Monzell's knowledge. A blanket order barring all reference to the absence of investigative steps risks excluding much relevant evidence.

Because it is overbroad, the Court **DENIES WITHOUT PREJUDICE** the Government's request that its investigative techniques not be questioned. As courts in this District have held before, the Government remains free to challenge "the admissibility of any trying-the-investigation evidence...presented in the context of trial." <u>Trinidad-Nova</u>, 2026 WL 84174, at *2.

### C. Self-serving out-of-court statements

The Government requests a blanket ruling barring Monzell from referencing his own self-serving out-of-court statements, framing their exclusion as longstanding "blackletter law" in this Circuit. (Docket No. 365 at 6). Monzell objects that that "rule...is correct but incomplete" since some recorded statements may indicate his contemporaneous state of mind, come in as verbal acts, or show how the Government's words affected him. (Docket No. 380 at 7-8).

Both parties recognize that Fed. R. Evid. 801(d)(2)(A) and First Circuit case law bar the admission of self-serving hearsay put forward for the truth of the matter asserted. *See, e.g.*, <u>United States v. Palow</u>, 777 F.2d 52, 56 (1st Cir. 1985) ("[t]he requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them" since it demands that

the "admission at issue be contrary to a party's position at trial") (citation omitted). Hence, Monzell's out-of-court statements are not admissible under this rule when they truly constitute hearsay and are offered for his benefit.

Nevertheless, the Court will not enter the broader categorical order the Government requests. Not every out-of-court statement by Monzell is necessarily hearsay. "Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context-such as a statement offered for the limited purpose of showing what effect the statement had on the listener-are not hearsay." United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008) (collecting cases).

Because it is overbroad, the Court **DENIES WITHOUT PREJUDICE** the Government's request that Monzell be barred from eliciting any reference to his out-of-court statements. The Government remains free to challenge the defense's attempts to admit out-of-court statements at trial, and the Court will decide at that juncture whether they fall into a non-hearsay bucket.

## III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the *Motion in Limine* at Docket No. 365. The Court **GRANTS** the *Motion in Limine* as it relates to jury nullification, plea negotiations, and discovery. The Court **DENIES WITHOUT PREJUDICE** (a) the Government's request that its

investigative techniques not be questioned, and (b) the Government's request that Monzell be barred from eliciting any reference to his out-of-court statements. The Government remains free to challenge evidence about its investigative techniques or Monzell's out-of-court statements at trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of April 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE