**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[7] MARK BRUNO MONZELL MAJOR,<br><br>**Defendant.** | **NO. 23-312-7 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Mark Bruno Monzell Major ("Defendant" or "Monzell")'s *Motion to Dismiss for Lack of Jurisdiction* ("*Motion*"). (Docket No. 336). Having considered the *Motion*, the United States of America (the "United States" or the "Government")'s response in opposition thereto, the supplemental materials requested by the Court, *see* (Docket Nos. 394, 406), and Monzell's *Response* to the supplemental materials, (Docket No. 426), the Court hereby **DENIES** Defendant's *Motion*.

**I.    BACKGROUND**

On August 23, 2023, a Grand Jury in this District indicted Monzell, alongside several co-defendants, on three counts: conspiracy to commit money laundering, attempted money laundering, and money laundering. (Docket No. 3 at 2-6). The United States claimed that Monzell and several of his co-defendants participated in a plan to transport the illicit proceeds of controlled substance

Criminal No. 23-312-7 (RAM)                                                    2

sales in the form of bulk currency from the United States to places elsewhere, such as the Republic of Colombia. Id. at 3. Monzell, in particular, was accused of conspiring to participate in this money laundering scheme; of himself delivering $165,000 in bulk U.S. currency as a part of this scheme in June 2022; and of attempting to deliver $413,411 in bulk U.S. and Bahamian currency in October 2022. Id. at 5-6.

On February 26, 2026, Monzell filed the present *Motion to Dismiss for Lack of Jurisdiction* ("*Motion*"). (Docket No. 336). Therein, he claims that he was apprehended in the Republic of Panama and extradited to the United States for conduct he alleges occurred entirely in the Commonwealth of the Bahamas. Id. at 1. Monzell argues that all charges against him ought to be dismissed for two reasons: (a) because he reserved the "specialty principle," which is guaranteed by treaty and prohibits prosecution for crimes from **before** a detainee's surrender (aside from the crime for which they are extradited); and (b) because the money laundering statute does not cover a non-U.S. citizen's conduct outside of the United States. Id. at 2-3, 8-10, 11-12. Monzell further contends that money laundering is not an enumerated extraditable offense in the extradition treaty between the United States and Panama and that the conspiracy charge is barred by the specialty principle. Id. at 10-11, 14-15; (Docket No. 336-1).

Criminal No. 23-312-7 (RAM)                                          3

On March 11, 2026, the United States filed its *Response* to Monzell's *Motion*. (Docket No. 352). The United States argues that Monzell cannot invoke the rule of specialty here, given that his extradition **was** for the money laundering crimes for which he is indicted. Id. at 2-3. The United States also refutes Monzell's contention that the extradition treaty between the United States and Panama is dispositive in this case. Id. at 3. The Government says that both the United States and Panama are parties to the *1998 United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances* (the "United Nations Convention"), which authorizes extradition for money laundering. Id. at 3-4; (Docket No. 352-1 at 51). The Government argues that Monzell's extraterritoriality arguments fail on account of the simple fact that the Grand Jury indictment alleges that Monzell's conduct occurred at least in part in the District of Puerto Rico. (Docket No. 352 at 5-9).

On March 27, 2026, Monzell filed his *Reply* to the Government's *Response*. (Docket No. 363). Therein, Monzell rejects the United States' focus on the abstract question of whether money laundering is extraditable. Id. at 2. Instead, Monzell emphasizes that the case "turns on the documented terms under which Panama surrendered [him] in this case." Id. Those terms, he avers, contain an express non-waiver of the rule of specialty. Id. at 2, 4-6. Monzell then places the burden of "demonstrating that each charge falls within

the scope of the extradition Panama authorized" onto the Government. Id. at 2. According to him, the Government has failed to carry it. Id. As for the United Nations Convention, Monzell argues that even if it renders money laundering an extraditable offense, the Government has failed to carry its burden of demonstrating that the charges Monzell faces now are within the scope of extradition. Id. at 6-8. Monzell also requests that "[s]hould the Court decline to dismiss on the existing record, it should at minimum require the government to produce the extradition request." Id. at 7. Lastly, Monzell argues that since the United States acknowledges that his conduct occurred partly in the Bahamas, he cannot be charged under a money laundering statute which does not cover a non-U.S. citizen's actions there. Id. at 8-9. According to Monzell, the Government must do more at this stage than point to the "general venue of a multi-defendant conspiracy." Id. at 9.

On April 20, 2026, in line with Monzell's request for the Court to require the Government to produce extradition papers, the Court ordered the United States to file "Panama's extradition grant and related surrender documents, with certified English translations if necessary." (Docket No. 394). After obtaining an extension, the Government complied on April 29, 2026. (Docket No. 419). The Government attaches four documents. Id. First, it attaches a declaration from the State Department attesting that

Criminal No. 23-312-7 (RAM)                                          5

the United States Embassy in Panama asked Panama to extradite Monzell for the same counts of conspiracy, attempted money laundering, and money laundering enumerated in the Indictment. (Docket No. 419-1). The declaration avers that the Diplomatic Note received from Panama's Ministry of Foreign Affairs constitutes an official grant of extradition and does not impose any limitation on the United States' ability to prosecute Monzell for the relevant charges. Id. at 2. Second, the Government attaches the June 11, 2024 Diplomatic Note from the United States Embassy for Panama, which explicitly enumerates all three counts for which Monzell was charged in the Indictment and cites the United Nations Convention. (Docket No. 419-2). Third, the Government attaches the July 31, 2024 Diplomatic Note from Panama granting extradition in a "simplified" process. (Docket No. 419-3). Fourth, the United States attaches what it describes as a "Request for Extradition" from May 2024; the Request includes the entirety of the Indictment. (Docket No. 419-4).

On April 23, 2026, a Grand Jury in this District returned a Superseding Indictment against Monzell and his co-defendants. (Docket Nos. 400, 408, 414, 414-1). The Superseding Indictment preserved the charges related to conspiracy to commit money laundering, attempted money laundering, and money laundering as to Monzell. (Docket Nos. 400, 414-1). However, it adjusted the valuation of the bulk U.S. and Bahamian currency Monzell is alleged

Criminal No. 23-312-7 (RAM)                                          6

to have attempted to deliver in October 2022 to $368,000. Id. at 6.

On May 6, 2026, Monzell filed a *Response* to the Government's submission of the aforementioned four documents. (Docket No. 426). Monzell reiterates his argument that the rule of specialty is mentioned in Panama's grant of extradition and notes that a State Department declaration cannot serve as a substitute for Panama's words. Id. at 5-6, 8-9. He reiterates that the United Nations Convention binds the Government's prosecution to a drug-proceeds theory. Id. at 7-8. Lastly, Monzell alleges that the Superseding Indictment creates a new set of rule-of-specialty problems, because Panama was not notified of the new indictment and the new indictment allegedly materially changes what Monzell is charged with. Id. at 9-12.

## II.   APPLICABLE LAW

### A. Superseding indictments and motions to dismiss

As a matter of law in the First Circuit, "the grand jury's return of a superseding indictment does not void the original indictment." United States v. Vavlitis, 9 F.3d 206, 209 (1st Cir. 1993) (citing United States v. Friedman, 649 F.2d 199, 202 (3d Cir. 1981); United States v. Holm, 550 F.2d 568, 569 (9th Cir. 1977)). Other districts in this Circuit have addressed pending motions to dismiss "as they pertain[ed] to" superseding indictments where the relevant legal question remained unchanged

Criminal No. 23-312-7 (RAM)                                          7

and doing so promoted judicial economy. *See, e.g.,* <u>United States</u>
<u>v. Ernst</u>, 502 F. Supp. 3d 637, 643 (D. Mass. 2020). Similarly,
this District has "extended" the applicable arguments made by
criminal defendants in earlier motions to dismiss to superseding
indictments. *See, e.g.,* <u>United States v. Cruz-Osorio</u>, 2023 WL
7019422, at *1 (D.P.R. 2023).

### B. Motions to dismiss pursuant to Fed. R. Crim. P. 12

The Constitution of the United States requires that, "[i]n
all criminal prosecutions, the accused shall . . . be informed of
the nature and cause of the accusation." U.S. Const. amend VI. To
protect that right, the Federal Rules of Criminal Procedure state
that an indictment "must be a plain, concise, and definite written
statement of the essential facts constituting the offense
charged[.]" Fed. R. Crim. P. 7(c)(1).

Pursuant to Fed. R. Crim. P. 12(b)(1), "[a] party may raise
by pretrial motion any defense, objection or request that the court
can determine without a trial on the merits." However, the power
to dismiss an indictment pursuant to Fed. Crim. 12(b) is "reserved
for extremely limited circumstances" because it "directly
encroaches upon the fundamental role of the grand jury." <u>Whitehouse</u>
<u>v. United States District Court</u>, 53 F.3d 1349, 1360 (1st Cir. 1995)
(citing <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 263
(1988)).

A motion to dismiss must attack the facial validity of the indictment and not the government's substantive case. See United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (citing United States v. Stewart, 744 F.3d 17 21 (1st Cir. 2014)). When a defendant seeks an indictment's dismissal, "courts take the facts of the indictment as true, mindful that 'the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" Ngige, 780 F.3d at 502 (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)). "In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend and allows him to contest it without fear of double jeopardy." Savarese, 686 F.3d at 7 (citation omitted). Most notably, "the government need not put forth specific evidence to survive a motion to dismiss." Ngige, 780 F.3d at 502.

The courts' reticence regarding pretrial motions to dismiss indictments reaches cases where defendants contend subject matter jurisdiction is lacking. *See, e.g.*, United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2012) (quoting United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998)) (alterations in original) ("unless prosecutors have 'made what can fairly be described as a full proffer of the evidence [they] intend[] to present on a pretrial

to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment.'") With few exceptions, a district court generally has subject matter jurisdiction over a federal criminal case "if the indictment charges that the defendant committed a crime described in a federal criminal statute." United States v. González-Mercado, 402 F.3d 294, 300-1 (1st Cir. 2005) (quotation omitted).

## C. The rule of specialty

The Supreme Court of the United States has long recognized the rule of specialty, which is the principle that an extradited detainee "shall be tried only for the offense with which he is charged in the extradition proceedings, and for which he was delivered up[.]" United States v. Rauscher, 119 U.S. 407, 424 (1886). The First Circuit has similarly and repeatedly emphasized that an extradited defendant may be tried only for "the crimes on which extradition has been granted, and none other." United States v. Saccoccia, 58 F.3d 754, 766 (1st Cir. 1995); see United States v. Georgiadis, 819 F.3d 4, 9 (1st Cir. 2016).

The rule of specialty is based on international comity and the idea that "the requesting state must live up to whatever promises it made in order to obtain extradition because preservation of the institution of extradition requires the continuing cooperation of the surrendering state." Saccoccia, 58

F.3d at 766 (internal quotation omitted) (citation modified). In this Circuit, "the inquiry into specialty boils down to whether, under the totality of the circumstances, the court in the requesting state reasonably believes that prosecuting the defendant on particular charges contradicts the surrendering state's manifested intentions." Id. at 767. Hence, when the principle of specialty is invoked, courts may look to the surrendering state's extradition decision and related documents in order to determine whether the surrendering state in fact authorized the defendant's extradition on the counts charged in that person's United States indictment. Georgiadis, 819 F.3d at 9.

### III. ANALYSIS

As a threshold matter, the Court notes that a Superseding Indictment has been filed in this case. (Docket Nos. 400, 408, 414, 414-1). Nevertheless, as it relates to Monzell, the new indictment preserves the charges against him and does nothing other than adjust the valuation of the bulk U.S. and Bahamian currency he is alleged to have tried to deliver. Id. at 6. Moreover, as a matter of law in the First Circuit, "the grand jury's return of a superseding indictment does not void the original indictment." Vavlitis, 9 F.3d at 209 (citing Friedman, 649 F.2d at 202; Holm, 550 F.2d at 569). Other districts in this Circuit have addressed pending motions to dismiss "as they pertain[ed] to" superseding indictments where the relevant legal question remained unchanged

and doing so promoted judicial economy. *See, e.g.,* Ernst, 502 F. Supp. 3d at 643. Similarly, this District has "extended" the applicable arguments made by criminal defendants in earlier motions to dismiss to superseding indictments. *See, e.g.,* Cruz-Osorio, 2023 WL 7019422, at *1. Here, the jurisdictional issues challenged by Monzell bear on both indictments, and so the Court proceeds to consider them as applied to the Superseding Indictment. The Court does not credit Monzell's argument that the Superseding Indictment materially enlarges the claims against him. *See* (Docket No. 426 at 9-12). In fact, a comparison of the indictment from August 2023 with the indictment from last month reveals that the phrasings of the counts against Monzell are **identical**, aside from the Government's reduction of the valuation of the amount he allegedly laundered on one occasion from $413,411 to $368,000. *Compare* (Docket No. 3) *with* (Docket Nos. 400, 414-1). Since the rule-of-specialty and extraterritoriality issues apply equally to the two indictments, the Court considers them as applied to the Superseding Indictment below.

"When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true[.]" Ngige, 780 F.3d at 502. Therefore, the Court assumes for the purpose of this motion that Monzell did engage in a money laundering scheme occurring at least partly in the District of Puerto Rico.

### A. Monzell's extradition was for the money laundering crimes alleged

The rule-of-specialty dispute between Monzell and the Government "boils down" to whether Monzell is indeed being tried for "the crimes on which extradition has been granted, and none other," or, in the alternative, whether the Government has now brought a broader case against him than permitted by Panama's extradition grant. Saccoccia, 58 F.3d at 766; see Georgiadis, 819 F.3d at 9. Monzell's arguments rest largely on the fact that he reserved the "specialty principle" while being extradited. (Docket No. 336).

Unfortunately for Monzell, there is now substantial evidence on the record that he is indeed being tried for "the crimes on which extradition [was] granted, and none other." Saccoccia, 58 F.3d at 766; see Georgiadis, 819 F.3d at 9. The Government has submitted a declaration from the State Department attesting to the fact that the United States Embassy in Panama asked Panama to extradite Monzell for the same counts of conspiracy to commit money laundering, attempted money laundering, and money laundering enumerated in the Indictment. (Docket No. 419-1). The State Department declaration shows that the United States Embassy in Panama "expressly informed the Government of Panama" that these charges form "the basis of the extradition request." Id. at 2. As well, before the Court is the actual June 11, 2024 Diplomatic Note

from the United States Embassy for Panama, which explicitly enumerates all three counts for which Monzell was charged in both indictments and cites the United Nations Convention. (Docket No. 419-2). These documents conclusively demonstrate that Monzell is being tried for the crimes on which his extradition from Panama was granted.

Monzell dedicates much energy to attempting to show that the Superseding Indictment creates a new set of rule-of-specialty problems, because Panama was not notified of the new indictment and the new indictment allegedly materially changes what Monzell is charged with. (Docket No. 426 at 9-12). The Court disagrees. As aforementioned, a comparison of the indictment from August 2023 with the Superseding Indictment reveals that the phrasings of the counts against Monzell are **identical**, aside from the Government's reduction of the valuation of the amount he allegedly laundered on one occasion from $413,411 to $368,000. *Compare* (Docket No. 3) *with* (Docket Nos. 400, 414-1). While it adds codefendants and modifies charges faced by others in this case, the Superseding Indictment does not alter the case presented to Panama as to Monzell. The First Circuit has long counseled that "specialty...is not a hidebound dogma, but must be applied in a practical, commonsense fashion. Thus, obeisance to the principle of specialty does not require that a defendant be prosecuted only under the precise indictment that prompted his extradition." Saccoccia, 58

F.3d at 767. The Circuit has even declined to apply specialty when the prosecution added additional counts against the defendant. United States v. Tse, 135 F.3d 200, 205 (1st Cir. 1998) (holding that prosecution on additional attempted murder counts did not violate the rule of specialty where those counts arose from the same facts and "single chain of events" as the conspiracy count on which extradition was granted). Other circuits dealing with the exact circumstance of superseding indictments merely adding additional defendants and expanding the conspiratorial period have concluded that the new indictments did not materially alter the substance of the offense for which the defendant was extradited. See, e.g., United States v. Puentes, 50 F.3d 1567, 1576 (11th Cir. 1995) ("we do not believe that the superseding indictment materially altered the substance of the offense for which [the defendant] has been extradited...[where] the superseding indictment merely added additional defendants and extended the conspiratorial period for three years").

Given the totality of the circumstances in the case at bar and the fact that the language of the original Indictment and the Superseding Indictment are nearly completely identical, the Court cannot reasonably conclude that prosecuting Monzell on the present charges contradicts Panama's manifested intentions. See Saccoccia, 58 F.3d at 767. As a result, the Court **DENIES** Monzell's *Motion to Dismiss* at Docket No. 336 as to the rule-of-specialty issue.

**D. The extraterritoriality arguments must be tested at trial**

"Unless prosecutors have 'made what can fairly be described as a full proffer of the evidence [they] intend[] to present on a pretrial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment." Guerrier, 669 F.3d at 4 (quoting Alfonso, 143 F.3d at 776-77) (alterations in original); *see also* United States v. Lidinilah, 2020 WL 1674250, at *6 (D.P.R. 2020). Moreover, "[w]hen a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true[.]" Ngige, 780 F.3d at 502.

In the case at bar, the extraterritoriality dispute clearly turns not on an alleged legal defect in the Indictment, but on competing factual assertions as to whether all relevant conduct occurred in the Bahamas or some of it occurred in the District of Puerto Rico. *Compare* (Docket No. 336 at 1) (Monzell's claim that he was apprehended in Panama and extradited to the United States for conduct that occurred entirely in the Bahamas) *with* (Docket No. 352 at 5-9) (the Government's argument that the Indictment sufficiently alleges that some conduct occurred in the United States). The Government concedes that the conduct underlying the charges "occurred in part in the Bahamas." (Docket No. 352 at 8). Nevertheless, Monzell's averment that **all** relevant conduct occurred there cannot yet be credited, as the question for the

Court at this stage is merely whether the Indictment sufficiently alleges an offense within the reach of the statute.

The Court rules that it does. The Government continues to stand by the Indictment, which alleges repeatedly that money laundering occurred "within the District of Puerto Rico." (Docket No. 3 at 1, 3, 4). These allegations, taken as true, satisfy Section 1956, which expressly provides for jurisdiction over a non-U.S. citizen's conduct where "the conduct occurs in part in the United States" and the transactions exceed $10,000. 18 U.S.C. § 1956(f) ("[t]here is extraterritorial jurisdiction over the conduct prohibited by this section if...the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and...the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000"). The First Circuit has rejected extraterritoriality-based dismissal arguments in drug trafficking and money laundering cases, holding that such arguments "go[] to the sufficiency of the evidence, not to whether the indictment -- which was facially valid -- should be dismissed." United States v. Fonseca, 49 F.4th 1, 11 (1st Cir. 2022) (citing United States v. Stewart, 744 F.3d 17, 22 (1st Cir. 2014) ("[A]t the motion-to-dismiss stage, the allegations are taken as true, leaving for the jury the questions of the actual scope of the conspiratorial agreement....")).

As a result, the Court **DENIES** Monzell's *Motion to Dismiss* at Docket No. 336 as to the extraterritoriality issue. The underlying factual dispute will be resolved at trial.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss* at Docket No. 336 is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of May 2026.

s/Raúl M. Arias-Marxuach_____
UNITED STATES DISTRICT JUDGE